I am Steve Connor, and I'm here on behalf of the appellate in this matter, Deanna Powell. Let me say, to begin with, that we asked for a supplemental briefing on the jurisdictional issue. You both agree there's jurisdiction. Unless my colleagues have any questions, I assume there's not much point in addressing that. Okay. Thank you. Your Honor, then I'll get to this underlying motion dismissed, which was granted by Judge Alsop. As the Court's aware, we had filed two claims under New York statutes, under the New York Labor Code. One claim was under Section 193. I'm going to call that the Compelled Purchase Statute or the Deduction Statute. The second claim was under Section 198, which is referred in the statute itself. Could I ask you to speak up just a little bit? Yes, I'm sorry, Your Honor. Are you into the microphone? The second claim is under Section 198 of the New York Labor Code, and that is referred to as the Kickback Statute. As we indicated in our complaint and as we alleged, our client was an employee of the Gap stores. Upon seeking employment at the Gap stores and after training, she was told that in order to work there, she was going to have to purchase and wear clothing from the Gap during the course of her employment. She did so. She purchased the clothing in order to continue her employment, and we allege that this was a violation of the two statutes that we've identified. The first statute, what I'm calling the Compelled Purchase Statute, prohibits, except in the case of certain authorized things, which are enumerated in Section 1 of this, Subsection 1 of this statute, and there's no dispute. I don't think I'm part of either opposing counsel or Judge Alsop that Section 1 did not apply. It prohibits charges against wages or requiring an employee to make any payment by separate transaction. Let me just back up for a minute. This case is on the pleadings only at this point. Correct, Your Honor. Do the pleadings say whether the clothing was sold at cost or at a profit or what? We ended up amending the complaint. We didn't think that was an element of the claim, but we amended the complaint to allege that we believe that they were sold at a profit to our clients. I'm sorry. That they were sold at a profit to our clients. Does that make a difference under your theories? Your Honor, I don't believe so. And the reason I say that is because as far as I understood both from Judge Alsop's ruling and from the position of the Gap, there was no dispute that the Gap was sold at a profit. No, I'm asking does this make a difference to you under your theory of the case. In other words, would it make a difference under any of the New York statutes whether the clothing was being sold at Gap's cost or whether Gap is making a profit? I think my answer would be no, Your Honor. I think that what I allege the Gap cannot do is unless they've gotten a specific signed written agreement from our client to purchase something that's for the employee's benefit, then they can't do this. And it doesn't matter whether they make a profit or not. If they were selling these at cost to our clients. But isn't, for example, the kickback theory a lot more plausible if they're making money on it? Well, Your Honor, I think there would be a stronger public policy argument against it arguably. But I think the concern of these wage statutes is to protect what the employees get and earn and that they're not compelled to turn over money to their employer in order to retain their employment. And that seems to be the problem here. In order to retain your employment with the Gap, you have to purchase clothing. And both of these statutes, we believe, prohibit that from happening. Let me be quite frank with you. I think the kickback argument goes nowhere. You've got something on the other statute. But the puzzling thing is that there are no New York cases. This sort of thing probably happens often enough in New York. Do you have any theory as to why nobody in New York has ever chosen to sue on it? Your Honor. Are you the only out in Seattle, you're the only people who saw the light? Your Honor, I don't have a good answer to that other than I know that this practice is prevalent in the clothing retail industry. And I don't know if it's prevalent in other industries. So it may be something that's unique to that. I mean, we'll be cutting out new law for a State that we don't have much to do with, but that you're asking us to do. Well, Your Honor, I've heard the Gap say that in his briefing and with all respect to your position. I do not feel as if this is new law. I feel that this is the statute. We're simply asking the Court to construe the statute. Well, since we don't have any, I'll just take up this, since we're already here, Judge Noonan's already taken it up. Since we don't have any New York law on this and we haven't had New York tell us anything about this, isn't this a logical thing for us to refer to New York to decide rather than us? Well, Your Honor, I guess I believe because the statutes, in my opinion, are clear on their face and are supported by lengthy legislative history and case law in terms of the rationale behind them,   I think it's fair to say that New York should not be compelled to purchase things  I think it's fair to say, namely, that employees should not be compelled to purchase things from their employer. So you're not asking us, you wouldn't want us to send it to New York? Your Honor, I am. Meaning to certify it. Yes. Yeah. I guess I would not be opposed to that. I don't. It seems. You say you're opposed to that? No, I'm not opposed to that. Not opposed to it. Not opposed. Well, you obviously filed the case here somewhat strangely rather than New York. Well, we filed it here. The gap is located here because I'm located in Seattle. Frankly, that was one of the considerations. I mean, to be frank, the other problem I have with your case in the long run is your plaintiff And, you know, whether you're really going to be able to certify a class based on this plaintiff who worked for 12 hours and who never actually, therefore, had to engage in the continuing purchase of gap clothing that you allege occurred. And it seems to me you're going to have a lot of trouble proving that that even is a condition because she wasn't really subject to it and so on. Well, Your Honor, that's obviously an issue for class certification that we may have to deal with. I agree. It is our clear understanding that this was a prevalent practice, and our client was in part discouraged by this practice from continuing to work there. But I do think that has to do with class certification as opposed to the merits of the case. To go back to the theories of the case. With regard, I was initially of the same view as Judge Noonan about the kickback theory. But on the kickback theory, it would seem that it might matter whether it was a profit. Because if it was a profit, then it would seem that it's fairly hard to distinguish between saying you have to pay me a dollar a day to work and saying you have to buy something from me, which has the result of giving me a dollar a day to work. I mean, that's really what you're saying. But that would depend on whether there was a profit. And in that respect, Your Honor, we allege that on information and belief that there was a profit. I don't think that's obviously an explicit requirement of the statute. The statute doesn't say anything about profit. Except that a kickback suggests something that's going into the pocket of the person who's getting the kickback, as opposed to going to the pocket of somebody else. Well, and I guess another – even if there were not a profit, the benefit that the employer gets by demanding this is that they get to make our clients model their clothes at our client's expense. But they can employ our clients to model their clothes. Pardon me? They could employ – they could, for example, no doubt, I assume, make it a condition of work that they wear GAP clothes if they gave them the GAP clothes. Correct, Your Honor. And we would have no problem with that. So the modeling has nothing to do with it. Pardon me? So the modeling has nothing to do with any problem that – Just from the standpoint of whether the employer gets a benefit even if they're selling this at cost. Your Honor, I was trying to suggest that the employer does benefit even if they're not making a profit by virtue of having a captive audience that they're selling these clothes to. I understand that. But they could have that profit if they're willing to pay for it – that benefit if they're willing to pay for it. That's an okay thing to do. Yes. Yes, Your Honor. I would agree with that. Let me ask you another question. As I read your complaint, it doesn't seem to me that there's any requirement that you obtain only certain clothing, only wear certain things. Your Honor. And it was really your client – I mean, I'm reading the complaint. I don't see anything in it that suggests that your client had to buy certain clothes other than they be GAP. Is that correct? Your Honor, I think that's correct in terms of the allegation. Let me ask you a second question, then. I didn't see anything in your complaint that would suggest that your client couldn't wear the clothing any place they wanted to wear it. I would agree with that as well, Your Honor. So really what they were getting is they were required to – as I read the complaint, they were required to obtain the clothing. They could wear it any place they want, and they could buy any clothing they wanted, provided it was from the GAP, whether or not they had the wherewithal to do that or not. And you also allege that they had to keep it current, which I understand, which as I say I have a problem with your plaintiff. Right. But the notion being that they had to buy it – they had to wear the GAP clothes that were in the store at the time, essentially. Your Honor, I guess – and a counter example that's sort of silly, but if an employee worked at a tire store and was required to buy tires, obviously they could drive those tires wherever they wanted, but that to me doesn't mitigate the compulsion that's involved here that shouldn't be involved. Well, the only reason that I'm asking the questions is that I'm trying to determine if it really is a kickback or if there's value and there's nothing really kicked back. That's what I'm really trying to do because I read Bull and Bear Group versus Fuller and I realize I read what it says about that, and so I'm reading your complaint and I'm trying to make sure as to what I'm understanding about it. Well, our complaint alleges that we believe that they made a profit on it. And as I also understand, there is also no allegation that there was any deduction ever taken from any wages paid by GAP? Your Honor, it was not taken out of a paycheck. That's correct. But I do not believe that's a requirement of either statute. Well, I understand what your argument is. I'm just trying to make sure I have on the record because Angelo versus Labor Ready suggests that the deduction literally is an act of taking away or subtraction. And so I'm trying to figure out, based on your complaint, just exactly what you've alleged. And as I understand it, you did not allege that a deduction was taken from the wages. No. But the statute specifically says it doesn't have to be one. It specifically says it could be a separate transaction. Correct, Your Honor. And that's why those cases involving counterclaims brought against the employees which occurred, you know, not obvious in the context of the payment of the paycheck. But the closest analogy of the history of these statutes, it seems to me, is to the country, the company store hearing. Correct. I would agree. I think the compelled, yes, which is Section 183. But I do also believe that the kickback statute, which prohibits the employer from demanding that the employee buy or give anything, and it doesn't specifically say wages or other thing of value is what it says, is prohibited. And the idea behind that is employees shouldn't have to pay for their employment. And that under both those statutes, what's happening to our employees is that under both of those statutes. They're being forced to pay for their employment. They get clothing, but it's not clothing that on this record anybody can establish they wanted. It's not clothing on this record that anybody can establish they wore anywhere else. Our client might have hated the clothing for all the pleading suggests. So a lot of the considerations I think Judge Alsop addressed are not considerations that should go into how these statutes should be construed. Okay. We'll give you some time in rebuttal. Thank you very much. Good morning. I'm Lynn Hermley on behalf of GAP. You've just heard that the plaintiff had to pay to be employed, but we all have to pay to be employed unless our employer is going to allow us to come to work. How do you distinguish this from the company store case? Very different, Your Honor. How? In the company store, the employee never gets wages. The employee is paid in script. No. Apparently, the statute was amended to provide for a separate transaction. Yes.  which would have worked. But that was changed to say it didn't have to be that. It could be a requirement that you have to buy food from the company store. No. The purpose of the separate transaction was to prevent employers from removing from the paycheck the actual wages from the employees. And the New York cases make that clear. The only separate transaction cases which exist are those which focus on wages. And the examples are the Goupette case in which the employer sued for return of the wages via a counterclaim. And in those cases in which the employer was seeking to get the wages back, the courts held that was the case. And, of course, it's the allegation here that this person is paying wages, that GAP is paying wages to the employer, to the employee, but is putting strings on those wages, which is to say that you must spend some of those wages on GAP clothing. That's not a fair reading of the complaint, Your Honor. Why not? The employee never alleged that she spent her wages on these clothing. All she said was that she picked out three T-shirts and paid $7 each, a pair of capris and a belt. So your notion is that she had money other than her wages that she was paying with them? Well, she must have because she was only employed, according to her allegation, for two shifts in 12 hours. But her net result is that she is making less money for the time being than she contracted to make because she has to pay some money. Whether it's coming from a different pocket doesn't make a difference. She's still making less money than the contracted rate. That is not consistent with the holding in the New York cases, all of which require the money to come out of wages. And the HUDACs used to be the same. So you would maintain, therefore, that if somebody had, in a company store situation, if an employer made everybody sign an agreement and said, you're going to buy all your food from my store, that would be fine? No. I think that would be unlawful because the employee has no choice whatsoever. Typically in a company store situation, the goods are marked up so that the employee is paying higher than fair market value. Even if it's for fair market value, I'm still not seeing the distinction. There is a distinction. All of the New York cases focus on wages. So in HUDACs v. Frito-Lay, for example, where the salespeople had money that they had to turn over to the employer, the court said we need to focus on wages. And the language is ñ I'm not really understanding what you're saying about focusing on wages. If she were to amend her complaint and say that I'm dependent or if we had a different complaint of who was a week later and she said, I don't have any money except my wages, then she'd win? Not unless the purchases were deducted or it was a kickback. But the statute doesn't say deducted. It has the separate transaction language. Yes, but the separate transaction language was put in clearly from the case law and the legislative history to focus on situations in which the separate transaction is pulling back wages, not to apply for a bilateral transaction in which you ñ I am really not understanding what you're saying. Let's go back to the hypotheticals, okay? You tell me that if there were a company store, if an employer said you need to buy all your food from my store, and let's assume they were charging fair rates, that that would be covered by the statute. You have to sign a piece of paper when you take the job, I will buy all my food from your store. I would say certainly that analogy is closer to the New York statutes. But because the case ñ How is it different from this, from your situation? I don't see any difference. Well, first of all, we have a plaintiff who did not allege ñ I understand. There may be problems with this plaintiff. Let's leave her aside. Let's just talk about the statute right now. Okay. So what the statute tells us is you either have to have a deduction of wages, we don't have that. Right. Or a separate transaction. Or a separate transaction in which wages are returned to the employer. Okay. And then the case is ñ Those words are not in the statute. No, but the case law makes it clear. Well, you say that, but I think we ought to be quite clear. There is no case on point. Now, that may be an indication that New York lawyers agree with you and New York judges agree with you. But here we are, simple-minded Californians. We look at the statute, the words of the statute. Attention, I'm not from California. You're a quick-witted Idahoan. But the simple Californians look at the words of the statute, and a separate transaction is covered and doesn't require it from wages. Your Honor, I'd ask that you look at what the Court expressly said about that point in the Hudax v. Frito-Lay case, and I quote. Well, would you mind sending it back to the Court of Appeals? I do not believe it needs to be sent back to the New York State because I believe it's clear from the case law and the legislative history and the language of the statute that the district court was correct. Hudax says, while Section 193 on its face prohibits any payment by separate transaction, it is clear from the statutory context that any payment is actually meant to refer only to payments from wages. That could not more clearly address the issue that we've been discussing. And really, can you explain to me again how this is different with regard to payments from wages than the company store hypothetical? You mean if the person who was working for the company with the company store happened to have some other income because he had some savings, then the statute wouldn't apply to him? No. In the company store situation, the employee is paid in scrip. The scrip is only used. Excuse me. But not necessarily. Because the statute was amended to eliminate the scrip requirement. Never been a company store case or example that I've ever seen that had any other fact than that. The problem with the company store was the employee walked out with no money and with only the ability to use scrip. But the statute was amended apparently because there was a subterfuge going on to avoid that, in which what was going on, as I understand it, is that they were actually paying the money over and then requiring them into an agreement to engage in a separate transaction. That's why the language is there. That's what the legislative history says, right? The legislative history said where you give the employee the money and then say, give me the money back, that is an impermissible separate transaction. And buy something with it, though. No, that was not alleged in the legislative history. That was not allowed. So the company store situation is in exchange for something. Yes. In the company store situation, you get the scrip and you get the product. Now, I didn't quite follow your last answer. The statute refers to payment by separate transaction. Yes. So the employee is paying for something. The employee typically. What? The employee typically is paying back wages. No, I mean, in terms of the statute. Yes. He's covered if the employee is paying for something by separate transaction. The employee is typically paying back the wages to the employer. No, not back. Look at the statute. A payment by separate transaction. Yes. And so an example of that would be Goupette, in which the employer sued for the return of the wages. Well, that's one example. But this language seems to cover this situation. The employee has to pay by a separate transaction as a condition of his employment. But the case law makes clear that must come from the wages. For the obvious. No, it doesn't do that. I don't know. I don't think. This particular configuration of facts hasn't come up before. You don't have any cases. He doesn't have any cases. That's right. But we have cases that are not dissimilar. We have cases in which the courts refused to find impermissible transaction when the money was taken out of incentive compensation. We have cases like. When the money was what? Taken out of incentive compensation. So, for example, in the New York cases of Dean Witter, the employer subtracted a cost for a telephone. That was found not to be a violation. It was not taken out of a wage. The New York cases have focused on the need for wages. And the obvious reason. But this woman is making wages. That's why I'm not understanding what you're saying. She is making wages. She is not making incentive payments. She is not getting stock options. She is not doing anything else. She is making an hourly wage. And she left with the full payment for those hourly wages. And a requirement that she use some of those wages or to buy something from the store. On the allegations. We dispute the allegations. I understand that. On the allegations, she was able to go in and pick out three T-shirts. She chose herself. She never alleged that she wasn't able to return those T-shirts. She never alleged that she made any attempt to return them because she wasn't going to need them. She couldn't, obviously, have worn three T-shirts in the two shifts she worked. She never tried to allege that they were sold to her at greater than fair market value. She never alleged she was in a worse position. She left with her full wages and with the T-shirts and with the capris, all of which she could not have worn, all of which she didn't try to return. She did not leave in the situation that the statutes contemplated, which is in a worse position than she would have been if she had. Well, that depends on whether she wanted the T-shirts, right? Well, she doesn't allege she was compelled to purchase three. She could have certainly purchased one T-shirt and capris. All right. So let's kick out two of the T-shirts. You're still in the same position. This is to be – I understand that there are problems with the allegations in this case. And perhaps we should resolve it on that basis. But the overall allegation is that if she didn't leave after 12 hours, she would have had to continue to buy them and she would have had to continue to wear them. Presumably, she couldn't have returned them because they would have been worn. And it's that set of circumstances that right now we're discussing. But we are here on the allegations. And what's noteworthy is the plaintiff had three attempts, three options, three opportunities to change those allegations. She couldn't do that. She couldn't allege these purchases were made out of wages. She couldn't allege – I'm not understanding what you mean by that. I still – you keep saying that and I don't know what you're meaning by it. What I'm saying is both statutes require a direct link to wages. Meaning a deduction from wages? A deduction from wages. But it doesn't say that. It says a separate transaction. So then you seem to be saying, well, it doesn't have to come from her wages. It could come from her savings. Is that what you're saying? That is one of the things I'm saying. But HUDEX says even when the person is making wages and paying something back, unless it's from wages, it doesn't fall within the New York statutes. What court decided that case? HUDEX v. Frito-Lay, 90 NY 2nd, 342. Okay. I have that. And the quote is on page – according to my copy section, it's on the final page. And it says, I see.  And it says, While section 193 on its face prohibits any payment by separate transaction, it is clear from the statutory context that any payment is actually meant to refer only to payments from wages. And thus, in Hudax and in Dean Witter, and in this case, the money was coming from payments that never belonged to this person. They were never his in any sense at all. It was money that was being given to the employer, that was owed to the employer by a third party that was being passed through him. That's what they meant from wages, i.e., from his money, as opposed to from somebody else's money. Right. But the agency took a very strong position there that it doesn't have to come from wages, and that is what the court was addressing. Yes. But what they meant by it has to come from wages in context was quite obviously it has to come from his money, not from somebody else's money. Another example would be the Dean Witter case. Do you agree with that? Sorry? Do you disagree with that reading of this case? I do not disagree with that reading of the case, but the quote is helpful. Another case that would be similar to the issue you're raising is the Dean Witter case. And in the Dean Witter case, in the matter of Dean Witter Reynolds, which is 75 AD 2nd 373, there were deductions for telephone calls taken out of incentive compensation. And what the court said there is the incentive compensation is not wages. Under the issue you're posing, there would have been a different result because the employees were making wages. What court decided that case? The Supreme Court of New York. Okay. So it was not the highest court in the State of New York. No. It was the Supreme Court of New York Appellate District, and there was nothing in the case history that suggests the court was incorrect. Therefore, in all of these cases, the courts have required a direct link. Perhaps under a different statute, they wouldn't. We all pay expenses to work. Unless your employer allows you to come to work naked, every duress code requires you to pay something. Unless your employer picks you up, you are required to pay for a reason. Of course, but you don't have to pay your employer. That's the kind of foolish argument. I don't believe it is foolish, because the argument is she would have to pay something to attire herself. And the fact of the matter is she could shop for bargains. She didn't have to continue to buy new clothes all the time. It's a completely different matter. The fact of the matter is she alleged she picked out three T-shirts for $7 each. It's difficult to imagine she could have paid less for that. She doesn't allege she didn't wear them for the five years that occurred since that payment. She doesn't allege she couldn't have sold them for their fair market value. She doesn't allege that she didn't get value from the bilateral transaction that is clearly outside of the reach of these statutes. People in a company store get value. That does not seem to be the criterion. The problem with a company store is that people did not get the fair market value of the goods. The employers marked the goods. That's not in the statute. It doesn't care about that. It's in the history that talks about the reason. Okay, but it's not in the statute. And as far as one can tell from the statute, even if they were buying from Costco, they'd still have the same problem. That is correct. They could have the same problem, but not a problem within the meaning of these statutes. I mean within the meaning of the statute. The statute does not distinguish between Costco and an overpriced store. The district court said that plaintiff had attempted to shoehorn the policy incorrectly into a statute prohibiting unauthorized deductions or kickbacks. These facts do not fall within the statutory language, the case law, or the legislative history. Thank you very much. Thank you. We'll give you a minute in rebuttal. Thank you. I'd just like to make a comment. If I may, I'd like to repeat that I have the biggest problem with the state of the complaint given the circumstances of the plaintiff. Now, why shouldn't we say that this plaintiff isn't in any position to complain about any continuing obligation to pay, to buy more clothes because she didn't have to do that, and indeed, it isn't at all clear that she needed to, that she ever had an opportunity to wear any of the clothes that she actually bought. She could have returned them. She's in a very peculiar position. Well, Your Honor, I think my response to that would be we have alleged in the complaint that she was told that the policy was that she was going to have to buy these clothes and wear them, and she has suffered tangible harm. So I think she certainly has standing in this case. So our allegation is that she didn't have to do that. Well, as to some of it, but not as to the parts of it that she never had to carry out because she never didn't stay there long enough, i.e., buying more. I mean, one of the issues here is that the allegation is that you have to continue to buy these clothes all the time. That is a policy that she was told. But she was not subject to it because she never didn't stay long enough. Well, but, Your Honor, that's just a question of damages. I mean, people who are there for five years are going to have a much bigger claim than somebody that's there for two weeks. But in terms of whether there's a claim to the statute, it's clear that my client has suffered the harm that these statutes intended to prevent. Suppose they were to do a discovery and discover that she never wore any of the clothes and she could have returned them. I don't think that would make any difference. She was required to pay money to her employer to have her job. And so ---- It's hard to wear the clothes. But if she never wore the clothes because she didn't stay long enough. I'm just hoping that we're going to go. What I'm really concerned about is we're going to go through a complicated statutory analysis, perhaps even including referring it to the New York courts, and we're going to find out that there's nothing, you know, there's no there there in the end after discovery. Your Honor, I don't have the variety of this. So I don't mean to be doing anything I'm not supposed to be doing. But there have been a number of settlements with the gap in this allegation. This is not ---- I understand, sir. I think she could have come up with a better plaintiff or a plaintiff. I mean, if there's really a problem out there, you'd think there would be people trying to get into this case and make allegations that are more substantial. But what we've had happen is the people that were so upset about what they're being told they have to do have come to us. So it may very well make economic sense for somebody once they've learned what they're supposed to do, you know, to decide they're not going to continue to do this. So ---- I'm sorry. I didn't hear what you said. I guess the point I was trying to make is that some of these plaintiffs may be more intelligent than the rest of the class in terms of deciding they're not going to ---- In order, for example, to certify a case to the New York court, I assume, because this is a law in California, we would have to be able to certify that this issue is going to be determinative of the case. Without some discovery in this case, I don't know whether it's determinative of the case, because I don't know whether this plaintiff is going to stay in there. Well, Your Honor, I guess all I can say is this was on 12b-6 motion. We haven't done any discovery other than, you know, we've made the allegations that are a complaint. We would love to have done discovery, but we weren't there. We responded to 12b-6 motion when we filed the complaint. So if I could make two points regarding other matters. With regard to the Hudax case and the Dean-Witter cases, I would like to point out that those cases, the Dean-Witter case, which I don't think was actually cited in the statute, under subsection 1 of 193, the employee had agreed to a compensation formula that allowed for deduction for certain things. So that's a distinguishable case. Your Honor, I think you distinguished the Hudax case, which was where it was never the employee's money. The second point I'd like to make is that under the kickback statute, it's specifically contemplated that the payment that might be made, number one, might not be wages because it specifically says, or any other thing of value. Okay? So that doesn't mean it has to be wages under that statute. It means that if you tell me you have to buy roses for my sister to get your job, you've violated that statute. And the second thing I'd like to point out there is in terms of the sequence of this, it says that if it's something that's required to be paid even before or after such employee is engaged. So obviously if a payment is made before the employee is engaged, the employee is not getting wages. It's not being deducted from those wages. So what's happening is somebody is being forced to get a thing of value. Now, the absurd hypothetical I'll make about this is an employer says you have to pay me $20,000 to work for me for a year. And what I'm going to do for that is I'm going to give you a T-shirt. It's a really nice Gap T-shirt. And thereby I avoid the kickback statute. Let me ask you this. Suppose that these are so the cost. What are the damages? Well, Your Honor, I would argue the damages are that our client didn't want these clothes. What's that? I would argue the damages are the price of clothes. But concretely, what monetary value would you put on it? In the case of our client, her problem is she does not have a receipt for her jeans. They are not the Costco jeans that I buy. But I'm sure she, her expenditure would be. But what monetary value would you place on? She picked them out. What value would you put on being made to buy something that you have chosen? The face amount of what she paid. What? The face amount of what she paid. What she paid them would be the damages we would see. Why? She got value for it. Well, she got value if that's what she wanted. In fact, what you're arguing for is sort of a restitution remedy in which case you'd have to get back the jeans. Right. If the GAP wants them and if that's possible, I suppose. But I think the eggs are scrambled in that regard. But if, in fact, the GAP doesn't want the jeans, isn't it a sign that there isn't any kickback at all because she's used all the value in them? No, because what she's done is she's paid money for these jeans. She's paid money. That's what the GAP has. The GAP has the money. Okay. Thank you very much. Thank you both for an interesting argument. And the case of Howard v. GAP, Inc. is submitted. Thank you.
judges: Noonan, Berzon, Smith